**IN THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**

BID PROTEST

| | | |
|---|---|---|
| CIRCLE LINE – STATUE OF LIBERTY FERRY, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 07-237C<br><br>Judge John P. Wiese |

**REPLY BRIEF IN SUPPORT OF CIRCLE LINE'S MOTION FOR CLARIFICATION OF THE COURT'S MAY 14, 2007 OPINION**

Circle Line respectfully seeks clarification to ensure that all sides understand that the Court's *sua sponte* dismissal does not prejudice Circle Line's right to fully and fairly litigate its claims on their merits.

In support of this request, Circle Line's motion for clarification emphasized (i) that the Government never moved to dismiss the complaint filed concurrently with Circle Line's request for preliminary relief; (ii) that the Government never sought to have Circle Line's request for preliminary relief consolidated with a trial on the merits; (iii) that the Court made its preliminary injunction determination on an accelerated basis, without the benefit of reasonable discovery, an evidentiary hearing, or full merits briefing; and (iv) that Circle Line deserves an opportunity to present its case on the merits because a decision under Rule 65 speaks at most to the "likelihood

of success" on the merits (not to the merits themselves) and is therefore not "law of the case." CL Mot. for Clarif. at 3-5.

The Government opposes this request, but has no answer to the dispositive reasoning set forth in Circle Line's motion. The Government does not deny that it never moved to dismiss. The Government also does not deny that the preliminary injunction and trial phases of the case were never consolidated. *See* RCFC 65(a)(2). And it noticeably fails to cite any authorities to support its challenge to the settled rule that a decision at a case's *preliminary* injunction stage is *not* final and does not *permanently* bind the parties. With the applicable rules and law squarely against it, the Government nonetheless urges the Court to take the extraordinary step of preventing Circle Line from ever fully and fairly litigating its claims.

The Court should recall that, at its initial April 18 telephonic hearing, the Government insisted on pressing forward and declined to suspend the solicitation process to allow time for the Court to hold an evidentiary hearing and to adjudicate Circle Line's claims on their merits. *Cf.* Hrg. Tr. 73:13-14 ("I haven't had that much time to get off into the case law"); *id*. at 59:12-13 ("I have endeavored to read as much of the material you have given me"). Having forced this Court to decide the preliminary injunction issues on an expedited basis, the Government's attempts to transform the Court's hurried preliminary ruling into a final adjudication on the merits should not be tolerated. This Court surely did not set out to make *new* law with its dismissal order — much less make it in a total absence of explanatory reasoning and supporting citations. Circle Line's motion for clarification should therefore be granted.

## ARGUMENT

### I. There Are No Legal Obstacles To Adjudicating Circle Line's Right-Of-Preference Claim On Its Merits.

The Government's response brief crystallizes the reasons why the Court's order should be clarified. It appears that, although the Government concedes that Circle Line may pursue contract damages, it now takes the position that Circle Line should be barred for all time from seeking injunctive relief. *Compare* Gov't Br. at 3 (arguing that "[t]he Court found that Circle Line's sole remedy … was damages via breach of contract") *with* Gov't Opp. to Mot. for Prelim. Inj. at 15 ("Circle Line has an adequate remedy for the harm it alleges: bring a breach action in the future if it believes it has been damaged by the Park Service's refusal to honor a right Circle Line believes is in its contract."); *id.* at 16 (under *Amfac,* if "the Park Service …. breached an implied contractual right to renewal," Circle Line would be free to pursue an action in response "after the solicitation process"). Of course, this Court has found that Circle Line should in all events be permitted to seek damages on the contract in a future proceeding. *See Circle Line-Statute of Liberty Ferry, Inc. v. United States*, 2007 WL 1417430, *6 (Fed. Cl. May 14, 2007) (because "there is an adequate remedy of law for such a breach-the pursuit of contract damages-plaintiff is not entitled to specific performance"); 04/26/07 Hrg. Tr. at 69 (noting that if Circle Line is "displaced as the bidder" it would have a claim for "lost profits"). But, especially given the Government's willingness to mount arguments in a complete absence of legal support, no one can fault Circle Line for insisting on clarification of the Court's decision, as regards the possibility of future injunctive relief.

The Court should accordingly make clear that Circle Line is free to protest the Park Service's violation of its implied contractual rights, should have a fair opportunity to litigate its claims fully on their merits, and should be permitted to obtain whatever form of relief the law

allows. In *Amfac*, the D.C. Circuit made clear that concessioners are entitled on a case-by-case basis to prove, as "inferred from the conduct of the parties showing, in light of the surrounding circumstances," that they have an implied-right-of-preference in renewal as an unwritten term in their contracts. *Amfac Resorts, LLC v. United States Dep't of Interior*, 282 F.3d 818, 829 (D.C. Cir. 2002). The D.C. Circuit also made clear that plaintiffs in Circle Line's position are "permitted reasonable discovery to this end." *Id.* at 830.

It is therefore highly significant that Circle Line has not been given an opportunity to access information locked in the Park Service's files — information that may well confirm the uniform memories of both Circle Line's management and the Park Service's employees who negotiated Circle Line's contract. Nor has Circle Line had the opportunity to cross-examine whatever witnesses the Park Service might muster in support of its bare assertions that the negotiating parties' memories are coincidentally, and identically, incorrect. Perhaps most importantly, Circle Line has not been given an opportunity to present live testimony from its own witnesses, such as former Park Service Director George B. Hartzog. Recently, the current Park Service Director, Mary Bomar, commented: "I stand in awe of those who have come before me — especially George Hartzog." (*See* Attachment A). This "astute" and highly-respected former Director will confirm the existence of Circle Line's implied contractual right of preference and describe the policies and practices of the Park Service that were in place during the relevant time period.

The collective testimony of these witnesses, together with the collective impact of the Park Service's documents, could well address the Court's preliminary concerns, including by explaining why it would have been extremely difficult for the Park Service to modify its standard form contract (especially given the potential need for Congressional approval), and why oral

understandings were commonly reached between the Park Service and its trusted, long-standing concessioners. Those additional sources of information also might lay to rest the Government's unfortunate insinuation that the dedicated public servants, attorneys, and others who negotiated Circle Line's current contract have failed to correctly recall the relevant events. Contrary to the Government's suggestion that Circle Line's "renewal preference" was nothing "more than the same *statutory* right that all concessioners had under the 1965 Act," Gov't Br. at 2, these witnesses would testify that "the Park Service agreed that the right of preference in renewal would be part of the consideration that Circle Line would receive in return for its agreement to give up three years on its existing 1982 contract as part of the resolution of issues relating to the closure of the Statue of Liberty in the mid-1980s." Cables Decl. ¶ 5 (App. 552).

Although the Court held that, absent contemporaneous written evidence, Circle Line had not demonstrated a likelihood of success sufficient to warrant a preliminary injunction, it did not purport to establish a new, categorical rule that implied contracts rights can *never* be proven through witness testimony when records are not available. After all, courts often rely on witness accounts of oral statements made by government representatives in pleading and proving implied-in-fact contracts. *See, e.g.*, *Manloading & Mgmt. Assocs., Inc. v. United States*, 461 F.2d 1299, 1301, 1303 (Ct. Cl. 1972) (implied contractual provision found where option provision in contract reserved renewal right to government at its discretion, but authorized government agent informed bidders at pre-bid conference "that there would be no question about the renewal of the contract for the" next fiscal year); *Macke Co. v. United States*, 467 F.2d 1323, 1326 (Ct. Cl. 1972) (oral statement by government representative at pre-bid conference that winning concessioner was "expected to make a profit" showed implied understanding that contractor was "not expected to bear the risk of unreasonable losses" performing contract).

The Government is equally misguided when it argues that "the Court fully considered Circle Line's evidence of its renewal preference and determined that no such right exists in its current contract." Gov't Br. at 3. A court's consideration of the *available* record evidence in connection with a *preliminary* injunction motion does not bind the parties for all time. To the contrary, a court's ruling on a preliminary injunction is "tentative" and lacks the "complete record that [is] necessary to [a] final decision," making outright dismissal inappropriate. *International Commc'n Materials, Inc. v. Ricoh Co.*, Ltd., 108 F.3d 316, 319 (Fed. Cir. 1997). As the long line of authorities cited in Circle Line's motion make clear, a decision granting or denying a motion for preliminary injunction "does not involve a final decision on the merits of the parties' contentions." *See* CL Mot. for Clarif. at 4-5 (citing *Mackie v. Clinton*, No. 93-5001, 1993 WL 498033, at *1 (D.C. Cir. Oct. 27, 1993)); *see also Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001) ("all findings of fact and conclusions of law at the preliminary injunction stage are subject to change upon the ultimate trial on the merits"); *Benson Hotel Corp. v. Woods*, 168 F.2d 694, 697 (8th Cir. 1948); *Belgium v. United States*, 452 F.3d 1289, 1294 (Fed. Cir. 2006); *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 681 (Fed. Cir. 1990); *Black & Decker, Inc. v. Hoover Serv. Center*, 886 F.2d 1285, 1296 n.16 (Fed. Cir. 1989).

The Government is also wrong to conclude that the Court's decision on irreparable harm stands as an insuperable bar to a future protest based on Circle Line's implied rights. As an initial matter, Circle Line respectfully submits that the Court erred when it found no irreparable harm on grounds that Circle Line was the incumbent concessioner. *See Circle Line-Statute of Liberty Ferry, Inc. v. United States*, 2007 WL 1417430, *6-7 (Fed. Cl. May 14, 2007). This Court's decision last year in *Magic Brite Janitorial v. United States* is to the contrary. *See* 69

Fed.Cl. 319, 321 (Fed. Cl. 2006). *Magic Brite* presented the analytically indistinguishable question of whether an *incumbent* contractor claiming to hold an option to retain the expiring contract would suffer irreparable harm if the government denied the option and awarded the contract to another entity. The Court reasoned that because there was no "uncertainty as to whether a protester would have received a contract had the legal infirmities complained of not existed," an "order to terminate the [new] contract and exercise [the protester's] option will not compensate [the protester] for the delay in earning its stream of profits under the contract," making the injury "by definition" irreparable, a point even the Government "conceded." *Id.*

The same is true here. In fact, if the Court wishes to consider the incumbent status of a bid protester in determining the quantum of threatened harm, the better rule would be to find the harm more likely to be irreparable the *longer* the incumbent has held the contract. *See Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970) (right to "continue a business" in which plaintiff "had engaged for twenty years" is "not measurable entirely in monetary terms"). Circle Line wants to continue the family business it has built for fifty years, exercising the right of renewal that former Park Service employees have testified is part of Circle Line's current contract — it does "not want to live on the income from a damages award." *Id.*

In any event, if in fact the Court has reached a final decision — as opposed to a narrow preliminary injunction decision — that Circle Line is precluded from ever pursuing injunctive relief and may only recover damages for breach of contract, the Court should clarify its order to make this point clear. Such clarification would facilitate appellate review, and foreclose the Government from later arguing that Circle Line is precluded from seeking to recover the potentially millions in damages that it would incur if it were improperly denied the next contract.

## II. There Are No Legal Obstacles To Adjudicating Circle Line's Valuation, Transfer, and Rate-Based Claims On Their Merits.

With respect to Circle Line's other claims, the Government argues that Circle Line "appears to seek permission to litigate these claims again." *Id.* According to the Government these claims were determined adversely "as a matter of law." Gov't Br. at 4. But again those assertions are flatly indefensible. The settled rule is that a decision at a case's preliminary injunction stage is not a final determination on the merits. As noted above, Circle Line has never had an opportunity to fully litigate any of its claims on their merits and the Court has never held a hearing on the merits of those claims.

Compounding its error, the Government misconstrues the Court's May 14 decision. When the Court considered the yawning gap between the Park Service's lowball estimate of the value of Circle Line's property and the estimate provided by a disinterested third-party, it found that for bidding purposes the Park Service's disclaimers were sufficient to caution bidders that its estimates did not mean very much. *See Circle Line*, 2007 WL 1417430 at *5. The Court did not, however, bless the accuracy of the valuation figures themselves. Nor did the Court bless the Park Service's asset transfer procedures. To the contrary, it held that Circle Line's claimed harm was "speculative" because, contrary to statements made by Park Service officials, "the contract provides no mechanism" for transferring Circle Line's assets in advance of compensation and the Park Service has "no authority" to effectuate such a transfer. *Id.*

With regard to rate-setting, the Court did state that the Park Service was "within its rights" to unilaterally impose, rather than cooperatively negotiate, rates under the new contract. *Id.* at *6. But Circle Line respectfully believes that on this issue the Court erred and, with more complete briefing on the merits, would readily agree to change its decision. Although the Secretary is authorized to "establish [] terms and conditions" of concessions contracts, 16 U.S.C.

§ 5952(a)(10), that general authority is cabined by the specific limitations imposed by 16 U.S.C. § 5955(a), which provide that "each concessions contract shall permit the *concessioner* to set … rates," as well as the Park Service's own policy manual, which excludes rate-setting-by-fiat. *See Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1363 (Fed. Cir. 2002) (noting the "bedrock principle of statutory construction that the more specific statute will trump the more general"). Once more, however, whether the Court's preliminary injunction decision is right or wrong is not the only important point. The key point is, rather, that Circle Line simply needs to know whether or not an immediate appeal is necessary because this claim, like the others, is preserved for future adjudication on its merits.

Finally, the Government's cases addressing timeliness of a bid protest are irrelevant for purposes of deciding the motion for clarification. The Court need not answer *at this juncture* which of Circle Line's claims will or will not be timely at some *later* date. That question is not before the Court. The sole question is whether, consistent with applicable rules and precedents, this Court's denial of the motion for preliminary injunction and accompanying dismissal of the complaint should be without prejudice. That question is answered in the affirmative by the settled authorities that Circle Line has cited and to which the Government has offered no response.

## CONCLUSION

For the foregoing reasons, and those stated in Circle Line's Opening Brief, Circle Line respectfully requests that the Court clarify that it has only decided Circle Line's motion for a preliminary injunction and temporary restraining order, and that its dismissal order is without prejudice to Circle Line bringing a later action, if it so chooses, at the conclusion of the Park Service's bid evaluation process.

Respectfully submitted,

s/ Robert R. Gasaway
by s/ Edward H. Meyers

Robert R. Gasaway
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Attorney for plaintiff*
*Circle Line–Statue of Liberty Ferry, Inc.*

June 19, 2007

**ADDITIONAL COUNSEL:**

OF COUNSEL:

Raymond G. McGuire
KAUFF MCCLAIN & MCGUIRE LLP
950 Third Avenue, 14th Floor
New York, N.Y. 10022
Telephone: (212) 644-1010
Facsimile: (212) 644-1936

OF COUNSEL:

Edward J. Boyle
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
150 East 42nd Street
New York, N.Y. 10017
Telephone: (212) 490-3000
Facsimile: (212) 490-3038

OF COUNSEL:

Robert R. Ryland
Jeffrey B. Clark
Ashley C. Parrish
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Attorneys for Circle Line–Statue of Liberty Ferry, Inc.*

June 19, 2007